Morris Eder, J.
The trustees of an express trust made by Nathan M. Ohrbach instituted a proceeding pursuant to article 79 of the Civil Practice Act for judicial settlement of their account covering the period from January 31, 1947, the date of the trust indenture, to December 1, 1954. ' Objections to the account were filed by Gladys T. Ohrbach, income beneficiary of the trust. The trustees have now moved pursuant to section 1314 of the Civil Practice Act (providing, among other things, for an intermediate motion to dispose of any issues shown to be sham or irrelevant) to dismiss her objections.
Under the indenture the grantor transferred to the trustees certain shares of the common stock of Ohrbach’s Inc., and set up three trusts. As to each of the trusts it was provided that the net annual income or the sum of $8,500, whichever was the lesser, was to be paid to Gladys T. Ohrbach so long as she ‘ ‘ shall be living with Jerome K. Ohrbach, son of the grantor, as his wife ”. The remainder of the net income of each trust (or all of it, if Gladys should die or no longer be living with Jerome as his wife) was to be paid to each of their three children. Upon the death of each child and the termination of Gladys’ rights the corpus of that trust was to be given to the issue of such child, and, if none, to the issue then living of Jerome, and, if there be none, to Jerome.
*966 On July 23,1952 the marriage of Jerome and Gladys Ohrbach was dissolved by a divorce decree of the State of Nevada, thus ending as of that date her right to any trust income. Her objections to the account have been taken in her capacity as income, beneficiary for the effective period from January 1,1947 to July 23,1952.
No income was paid at any time because, according to the trustees’ account, there was no net income. This was due to the following circumstance :
The indenture specifically authorized the trustees to invest part or all of the trust estate as limited capital in a named brokerage firm. Accordingly on February 1, 1947 the trustees entered into an agreement with the members of that firm entitling the trust as a limited partner to interest plus a stated percentage of the net profits of the firm, but requiring it to bear a stated percentage of the net losses, if any. Thereupon the trustees borrowed from Jerome K. Ohrbach funds to make the investment, giving him as collateral the Ohrbach’s Inc. stock owned by the trust. During the next two years the brokerage firm operated at a loss. By December 31,1948, while the agreed interest of about $5,000 had been credited on the firm’s books to the trustees, their share of the net loss amounted to $44,274.94. The trustees decided not to continue further with the limited partnership and arranged with Jerome K. Ohrbach to repay his loan by transferring to him the balance remaining of the investment and the approximate $5,000 interest credit together with payment of additional moneys needed to make up the difference. The stock held as collateral was then turned back to the trustees.
Dividends on said stock had been and continued to be declared and paid. The income received by the trustees or credited as interest, after deducting expenses chargeable thereto, amounted to $41,968.53 for the effective period in which the objectant is interested. But, as a result of charging the $44,274.94 loss sustained in the limited partnership to the income account of the trust, there was a deficit instead of net income.
Gladys T. Ohrbach now requests that the trustees be directed to pay her the income of $41,968.53 as the “ net income ” of the trust, claiming error on their part in charging the investment loss against income instead of principal. Her objections deal solely with this loss.
The trustees have moved to dismiss her objections as insufficient in law on the ground that the loss was properly charged to income, thus resulting in no “net income”; and on the further ground that she is estopped by reason of her consent to the very matter now objected to and her subsequent specific *967 release of the trustees at the time of her divorce (the consent and the release will be later discussed).
Whether a gain or a loss shall be charged to principal or income is, of course, a matter of great importance to the person entitled as life tenant or income beneficiary of a trust to the net income as well as to the person ultimately entitled as remainder-man to the principal. The sensible rule (in the absence of a contrary direction in the instrument) is to charge to income all profits or losses earned or incurred in the use or investment of trust assets and to principal all gains or losses arising upon their sale or other disposition.
It is not denied that the brokerage firm operated at a loss as a result of which the trust as a limited partner was compelled to bear its share less, of course, interest credited. Such loss was in no sense an asset loss, but rather an operating one incurred in the use of trust assets rather than in their disposition. The circumstance that, instead of paying all cash, the trustees transferred to Jerome K. Ohrbach, and he accepted, the balance remaining of the investment as part payment on his loan, did not convert the already accrued operating loss into a loss arising upon a “ sale or other disposition ” of a trust asset; there was no sale of anything to him, merely a transfer of a credit instead of a payment in cash.
Had there been a profit instead of a loss, no one could possibly argue that it should not be treated as income. The parties agree that the interest credited on this investment was properly deemed income. But the agreed compensation for the investment consisted not only of interest but also a share of the profits (and a corresponding bearing of a share of the loss) of the firm. Whatever the composite net result of operating the business by way of interest and profits (or losses), that was chargeable to income as the net return on the investment.
Objectant naturally would like to receive all the income from profitable transactions and have all losses from unprofitable transactions charged to capital. But that may not be done. Since all the objections are based on the premise that the trustees improperly charged the loss to income, they must be deemed insufficient in law in view of the conclusion that the partnership loss was properly charged against income.
Moreover, assuming arguendo the impropriety of such act, objectant must be held to have released all claims relating to this trust.
Shortly after March 15, 1949 the trustees submitted to her a complete and detailed account “ for the period from January 31, 1947 to March 15, 1949 The limited partnership transaction *968 was then closed and all the data pertaining to the investment were set forth in usual account form. She then signed a statement on the summary sheet acknowledging its correctness and approving it. Immediately above this statement appear the items “ Income collected $35,024.78 ”, “Losses chargeable against Income $44,274.94 ”, and Deficit in Income Account $9,250.16 ’ ’. The purpose for accounting at this time was apparently to get her approval of the loss being charged against her income account.
She contends that this consent is not binding upon her, because she claims to have signed this, as well as other business documents, at her husband’s request without concerning herself with their contents. If that were the sole issue, a hearing would be in order to determine the facts as to whether she knowingly approved the account.
But if such issue might be said to exist concerning the 1949 approval, it was conclusively disposed of when she executed the release in 1952. Although she had never received any income from the trustees, she had at various times received loans from them totalling $6,500. At the very time that property settlement negotiations affected by the pending divorce were in progress between her attorney and her husband’s attorney she repaid said loans to the trustees, the final payment being made a few days after the signing of 11 documents embodying the property settlement but which were not delivered until after entry of the divorce decree. The documents included a separation agreement, a trust agreement, a deed to certain property, and reciprocal releases. She released not only members of the Ohrbach family and various corporations in which they were interested but also each of the trustees of the within trust, naming them, and expressly included a specific release of “ any claims existing ” in her favor as beneficiary under “ a certain inter-vivos trust agreement, dated January 31, 1947 created by Nathan M. Ohrbach as grantor ”. The various incidents of the over-all settlement clearly constitute adequate consideration for the release.
Objectant urges that she is not barred by this release because she signed it ‘ ‘ under the mistake and misunderstanding ’ ’ that a proper accounting had been made and that this was due to the trustees ’ failure to £ £ fully disclose the factual and legal effect ’ ’ of her signing the consent and release. Trustees are under a duty to disclose all the facts but are not required to advise adult beneficiaries of the legal effect of their acts. (Matter of Schoenewerg, 277 N. Y. 424.)
*969 Although it is said that her attorney (who represented her in the 1952 settlement and now in this proceeding) never saw any account of the trust hut accepted his client’s word that “ she had been fairly dealt with ’ ’ by the trustees, it is incredible that an experienced and able attorney would have his client repay a loan to the trustees and execute this specific release without inquiring why no income at all had been paid during the entire five years of the trust. Such inquiry would, of course, have revealed the allegedly improper charging of this loss against income. Or, if credence be given to her version, the estoppel is no less effective; for one may not escape on the ground of mistake the consequences of a deliberate signing of a release when simply inquiry would have elicited the information needed. In either event, then, whether she and her attorney knew the facts, or, being ignorant thereof, had her execute a release completely unconcerned about any claim she might have, she is barred from objecting to the account.
She also argues that a beneficiary is prohibited by statute (Personal Property Law, § 15) from releasing a trustee of his obligations under the trust. That section, however, merely restrains a beneficiary from transferring or giving up his right “ to enforce the performance of a trust to receive the income of personal property ”. The courts have construed this language according to its natural meaning, i.e., that future income may not be assigned or released, since, otherwise, the grantor’s intent to establish a “spendthrift” trust would be frustrated; but that accrued income may be validly assigned or released. (Matter of Glover, 246 App. Div. 781; Matter of Kaufman, 201 Misc. 905.) Section 1319 of the Civil Practice Act makes direct provision for a release by ‘1 the persons interested in the subject-matter of the trust” which, when filed in the County Clerk’s office, is fully effective and dispenses with the necessity for a judicial settlement as to them.
When this release was delivered, all rights of Gladys T. Ohrbach in the trust had terminated by virtue of the divorce. No statute prohibited her from then releasing all accrued claims. Even if we assume the existence of any ground of objection, she is estopped from raising it.
The motion is accordingly granted and the objections dismissed for insufficiency as well as on the ground of release. Settle order.