■ In the Matter of the Estate of JAMES M. O'HARA, Deceased. ELEANOR O'HARA, Respondent; KLEINMAN & SALTZMAN, Appellants, et al., Claimant-Objectant. — In a proceeding to judicially settle the account of the estate of James M. O'Hara, claimants-objectants Kleinman & Saltzman appeal from an order of the Surrogate's Court, Westchester County (Leggett, J., on the order; Brewster, S., on the decision), dated May 13, 1981, which denied their motion to dismiss the executrix' defenses to their claim for attorneys' fees and for summary judgment on this claim. Order reversed, on the law, with $50 costs and disbursements payable out of the estate, and motion granted. Eleanor O'Hara is the widow of James M. O'Hara and the executrix of his estate. At the time of his death, Mr. O'Hara and claimants-objectants Kleinman & Saltzman, together with two others, De Nolfo and Reventas, were defendants in a suit brought by L. A. Industries, Inc. The suit involved allegations that O'Hara, a director and shareholder of L. A. Industries, had wrongfully appropriated for his own profit an opportunity which had come to his attention in his official corporate capacity. Kleinman & Saltzman represented all the defendants in the suit. When O'Hara died, they assumed representation of his estate and of his widow as executrix and individually. On or about February 5, 1975 the lawsuit was settled. The total amount of the settlement was $177,500. At that time, defendants Di Nolfo and Reventas came alone to Mrs. O'Hara's home and told her that it would be necessary for her to contribute $75,000. Kleinman & Saltzman were not present and at no time did they discuss the matter with her or make any representations to her concerning it. Mrs. O'Hara was aware that the litigation involved her husband's interest in the Kord Company, which owned Hidden Hollow, a 285-unit garden apartment complex in Dutchess County. Mr. O'Hara owned a 40% share of Kord, which share could be estimated at $2,280,000 if each unit were valued at a minimum price of $20,000. She knew the physical extent and estimated value of the project at the time of the settlement. She thus paid $75,000 in order to protect a potential investment of much greater value. Although she alleged that she paid the settlement from personal funds, there is no evidence that the money came from other than estate funds. Kleinman & Saltzman neither contributed nor were they asked to do so; the balance of the settlement was paid by the other defendants. Prior to his death, Mr. O'Hara had received money from one Rico Brunette as an investment in L. A. Industries. O'Hara had signed a promissory note to Brunette in the amount of $12,000. Mrs. O'Hara knew of the matter and acknowledged her husband's liability to Brunette. On June 4, 1975 Kleinman & Saltzman wrote to Mrs. O'Hara, advising her that Brunette had filed a claim for $12,000 against the estate, and suggesting that $1,000 be offered him in settlement. On February 3, 1976 they wrote to her again,

reminding her that Brunette had filed suit against the estate for $12,000 and asking for her co-operation and advice. In the interim, Kleinman & Saltzman had discontinued their representation of the estate and of Mrs. O'Hara, who then engaged Philip Furgang as her attorney. On February 18, 1976 Furgang wrote to Kleinman & Saltzman, advising them that Mrs. O'Hara had forwarded their letter of February 3, 1976 to him and asking for their co-operation. On April 23, 1976 they wrote to Mrs. O'Hara again, advising her to take immediate action to rectify the default judgment that had been entered against the estate. Mrs. O'Hara acknowledged having received the letters but admitted that she had not read them and had taken no action in the matter. On May 21, 1976 Mrs. O'Hara, Philip Furgang and Kleinman & Saltzman met in order to liquidate Mrs. O'Hara's interest in Kord Company. At that time, Neil Saltzman asked her to sign a general release to his firm of any claims she might have against them to date. Philip Furgang, her attorney, was present and read the form. Mrs. O'Hara did not read the form, but signed it. She testified that she felt, "pressured" but that she "wanted" to release Kleinman & Saltzman and "felt that [she] should" do so. At some time subsequent to the above events, Mrs. O'Hara filed suit against Kleinman & Saltzman in the Supreme Court, Westchester County, alleging fraud in connection with the L. A. Industries settlement. An answer was duly interposed and the action has since remained dormant. On September 12, 1978 Mrs. O'Hara filed her statement of account as executrix of her husband's estate in Surrogate's Court, Westchester County, disallowing Kleinman & Saltzman's claim for $2,000 in legal fees. On October 6, 1978 Kleinman & Saltzman filed objections to her statement of account. Mrs. O'Hara moved to dismiss their objections, citing her Supreme Court action as a defense and attaching a copy of the summons and complaint therein. On June 4, 1979 the Surrogate denied her motion, holding that Kleinman & Saltzman could continue to assert their objections pending determination of their claim for legal fees. Extensive discovery was had between the parties in the Surrogate's Court, including a full day of inspection of Kleinman & Saltzman's files by Mrs. O'Hara's attorney, and two depositions of Mrs. O'Hara, taken on January 16, 1980, and May 6, 1980, respectively. On December 9, 1980 Kleinman & Saltzman moved for an order dismissing Mrs. O'Hara's defenses to their claim and for summary judgment thereon. In support of their motion they submitted an affirmation by Neil S. Saltzman, a copy of the general release executed by Mrs. O'Hara, excerpts of her depositions, and copies of the correspondence with respect to the Brunette claim. On January 16, 1981 Mrs. O'Hara's new attorney, Sylvain R. Jakabovics submitted an answering affirmation. On January 23, 1981 Neil S. Saltzman submitted an affirmation in reply, together with additional excerpts of Mrs. O'Hara's depositions. By order dated May 13, 1981 the Surrogate's Court, Westchester County, denied Kleinman & Saltzman's motion. Kleinman & Saltzman appeal. In declining to adjudicate the issue on the merits, the Surrogate referred to the pending Supreme Court action between the parties, holding that in view of the identity of issues between it and the instant proceeding, it would be an abuse of jurisdiction for the Surrogate to adjudicate the matter. We disagree. The Surrogate's Court and the Supreme Court have concurrent jurisdiction over decedents' estates. (*Matter of Tabler,* 55 AD2d 207.) The Surrogate thus had the legal power to decide the issue on the merits. In this case, he should have used his discretion to exercise that power. The Supreme Court action had remained dormant for over two years while the parties conducted extensive discovery under the Surrogate's supervision. Appellants were entitled to assume that the issues would be decided by the Surrogate in the context of the instant proceeding. After electing to conduct discovery in the Surrogate's

Court proceeding, Mrs. O'Hara should not be allowed to use the dormant Supreme Court action as a pretext for prolonging the proceeding and avoiding a resolution of the disputed issues. The Surrogate should thus have proceeded to adjudicate appellants' claim on the merits. *Renzi v Aleszczyk* (44 AD2d 648), cited by the Surrogate, is not directly applicable to the instant proceeding, but insofar as it does bear thereon it would seem to dictate an adjudication on the merits. The Surrogate further erred in declining to grant appellants' motion. Appellants were entitled to summary judgment. On May 21, 1976, Mrs. O'Hara executed a general release to appellants of all claims she might have had against them to that date. This release is valid notwithstanding a lack of consideration therefor. (General Obligations Law, § 15-303.) Such a release will bar suit on any cause of action arising prior to the date of its execution and delivery, in the absence of fraud or other vitiating circumstances in its inducement or execution. (*Gallo v Montenigro*, 17 AD2d 935; *G. S. C. Holding Corp. v Cervoni*, 69 AD2d 809.) In the absence of a fiduciary relationship between the parties to the release, the party seeking to avoid the release bears the burden of proving such fraud or other vitiating circumstances. Despite Mrs. O'Hara's unfounded contentions to the contrary, no relation of attorney and client subsisted between her and appellants at the time she signed the release. They had ceased to represent her in the L. A. Industries matter at the time it was settled, and Philip Furgang had assumed her representation in the Brunette matter. In addition, Furgang was present at the signing and read the release before Mrs. O'Hara signed it. Appellants were thus not representing her by that date and she had the burden of coming forward with evidence sufficient to allege a prima facie case of fraud or other misconduct in opposition to appellants' motion. The opponent of a motion for summary judgment must come forward with proof in evidentiary form, such as an affidavit by one with personal knowledge. An affirmation of an attorney, without personal knowledge will not suffice and should be entirely disregarded. (*Marine Midland Bank v Hall*, 74 AD2d 729.) Allegations must be specific and detailed, substantiated by evidence in the record; mere conclusory assertions will not suffice. (*Steingart Assoc. v Sandler*, 28 AD2d 801; *Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338.) Mrs. O'Hara has failed to carry her burden on either ground. First, her attorney's affirmation is incompetent evidence as a matter of law and must be entirely disregarded. Second, even if it were considered as evidence, Mrs. O'Hara has failed to allege facts with sufficient detail and specificity, based on evidence in the record, to establish a triable issue of fact on her claims of fraud or other misconduct by appellants. Much of Mrs. O'Hara's argument consists of allegations concerning the involvement of Lawrence Kleinman in the allegedly illicit business dealings of the late James M. O'Hara, and the consequent conflict of interest in the appellants' concurrent representation of all the defendants in the L. A. Industries litigation. There is nothing in the record to substantiate these allegations and especially on this ground, her attorney's affirmation should be disregarded. As to those facts which are in the record, even when viewed in the light most favorable to Mrs. O'Hara they are insufficient to establish a triable issue of fact. First, as to the Brunette matter, Mrs. O'Hara totally fails to substantiate her allegation that it was appellants' negligence or malpractice that prevented a settlement and led to the entry of a default judgment against the estate. Appellants submitted copies of their correspondence with Mrs. O'Hara and her attorney Furgang on the Brunette case. On a consideration of these letters it is clear that appellants were not negligent in their handling of the matter. It appears that Furgang, and not appellants, represented Mrs. O'Hara on the Brunette case between February and April, 1976, and that appellants had no responsibility to attend to the matter. Nonetheless, it is clear that they took steps to

advise her of the progress of the case and warn her of the possible harmful consequences of her inaction. Further, Mrs. O'Hara admitted that she had neither read the letters nor taken any action thereon. It is thus absolutely clear that her loss in the matter cannot be attributed to any negligence of appellants, but that it was her own inaction that directly caused her loss. Second, in order to avoid a release on the grounds of fraud, a party must allege every material element of that cause of action with specific and detailed evidence in the record sufficient to establish a prima facie case. (*Matter of Falk,* NYLJ, Dec. 17, 1980, p 10, col 1.) Mrs. O'Hara has failed to sustain that burden. In connection with the L. A. Industries settlement, she concedes that appellants never spoke with her and never made any representations to her; it was Di Nolfo and Reventas alone who induced her to settle. She knew that the L. A. Industries litigation concerned her husband's 40% share in the Kord Company, which owned Hidden Hollow, and she was acquainted with the physical extent and estimated value of that property. She was thus aware that she was paying $75,000 in order to protect an investment which might be worth in the millions of dollars. There can be no contention that she was fraudulently induced to settle the case. At the time she signed the release, May 21, 1976, Mrs. O'Hara was aware of all the above facts and events. In addition, she was represented by counsel, Philip Furgang, who was present and read the release before she signed it. Under the circumstances, Mrs. O'Hara cannot claim fraud in the inducement on the part of appellants (see *Matter of Ohrbach,* 4 Misc 2d 964; *Matter of Falk, supra*). Mrs. O'Hara alleges, at most, that she was "pressured" into signing the release. This does not state a claim of fraud. In short, she had failed to establish the existence of a triable issue of fact. Rabin, J. P., Margett, O'Connor and Thompson, JJ., concur.