**CITIBANK, N.A., Plaintiff,**

v.

**REAL COFFEE TRADING COMPANY, N.V., and Ramiro Restrepo, Defendants and Third-Party Plaintiffs,**

v.

**Jaime RIVAS, Sara Rivas, Aurora De La Torre, Sonia Gonzalez, T & R LTDA., Jaime Rivas & Company, Raymond Last and Abigail Arms, Third-Party Defendants.**

No. 82 Civ. 6681 (DNE).

United States District Court,
S.D. New York.

June 24, 1983.

Shearman & Sterling, George J. Wade, Brigid Carroll and Nicholas Rostow, New York City, of counsel.

Lynch Rowin Burnbaum & Crystal and Wolf, Arnold & Cardoso, P.C., Maurice Wolf, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

### FACTUAL BACKGROUND

For several years prior to 1979, plaintiff, Citibank, N.A. ("Citibank"), provided financing to defendant Ramiro Restrepo ("Restrepo") to ship coffee beans from the

Republic of Colombia to the United States. Defendant Real Coffee Trading Company, N.V. ("Real Coffee") is the corporate vehicle for Restrepo's exporting business. In 1979, disputes arose between the parties in which Citibank claimed Restrepo owed it more than $18,000,000 and demanded payment from Restrepo for that amount. In connection with this claim, Citibank applied the proceeds of a $4,000,000 non-negotiable certificate of deposit held at Citibank in Restrepo's name, thereby reducing the amount of its claim to more than $14,000,-000. Restrepo challenged Citibank's demand and, more specifically, its improper application of the proceeds of the $4,000,000 certificate of deposit.

In an attempt to settle their disputes,[1] the parties entered into an agreement dated November 16, 1979 establishing a Letter of Credit and a Refinancing Agreement between Citibank and Real Coffee (the "Settlement Agreement").[2] Pursuant to the Settlement Agreement Citibank agreed to forego its right to demand immediate payment of its $14,000,000 claim against Real Coffee. In return, Real Coffee agreed that $14,741,213.52 plus interest would be paid over an extended period of time as evidenced by two promissory notes executed on November 21, 1979 by Restrepo on behalf of Real Coffee to the order of Citibank (the "A Note," and "B Note").

Additionally, Citibank provided Real Coffee with new financing in exchange for which Real Coffee executed another promissory note (the "D Note") representing its additional obligation to repay Citibank $1,348,837.18 plus interest.[3] The aggregate amount which Real Coffee promised to pay Citibank under the A, B and D Notes was $16,090,050.70 plus interest. Each of the notes incorporates by reference the Settlement Agreement. As part of this agreement, on November 21, 1979 Restrepo executed his personal guaranty of Real Coffee's obligations and of its notes.

Citibank commenced this action on October 7, 1982 by filing a complaint and serving a summons, claiming that Real Coffee and Restrepo have failed to meet their obligations under the A, B and D Notes which have become due and owing. On December 13, 1982 Citibank filed an amended complaint. In the original complaint jurisdiction was predicated on diversity of citizenship, 28 U.S.C. § 1332. When defendants moved to dismiss the complaint for lack of jurisdiction, Citibank consented to the entry of an order dismissing the action as against Real Coffee. Citibank was granted leave to amend its complaint. In the amended complaint jurisdiction is based upon 12 U.S.C. § 632.

On January 19, 1983 defendants filed their answer to the amended complaint, asserting thirteen defenses and alleging five counterclaims. Some of the defenses and counterclaims allege that the defendants are protected from liability by the act of state doctrine, failure of consideration, fraud in the inducement by Citibank and breaches of the Settlement Agreement by Citibank.

As their fourth counterclaim defendants allege that Citibank wrongfully converted Restrepo's $4,000,000 certificate of deposit in applying it to amounts Citibank claimed were owed it. Defendants raise as their twelfth defense and fifth counterclaim what is in effect a prolix and somewhat confusing litany of misdeeds, constituting negligence, fraud and economic duress, by

1. Section 2.04(a) of the Settlement Agreement provides that, as a condition precedent to the effectiveness of the Settlement Agreement, "[t]he Guarantor and the Bank shall have exchanged general releases, in mutually satisfactory form, covering all acts and obligations of either of them undertaken or arising prior to the Loan Documents [*i.e.,* the Settlement Agreement, the Promissory Notes, etc.]." Such releases were exchanged between Citibank and Restrepo on November 21, 1979.

2. Pursuant to the Settlement Agreement, Citibank issued twenty-four letters of credit totalling $10,106,802 to the account of Real Coffee to finance coffee shipments to the United States.

3. In February 1980, Restrepo, on behalf of Real Coffee, executed a "New D Note" in substitution of the "D Note."

Citibank. In consequence of which, it in turn seeks relief against Citibank.

Specifically, the fifth counterclaim alleges that Jaime Rivas & Company, a New York coffee broker, bought coffee from Restrepo and other coffee exporters in the following manner: Jaime Rivas & Company ("Rivas") purchased coffee from Restrepo and others with money borrowed from Citibank. In return, Rivas executed promissory notes in favor of Citibank. Citibank then issued letters of credit. Rivas was not expected to have the funds to repay the Citibank loan until the coffee reached New York City and was thereafter sold. In the meantime, Citibank executed trust receipts in its favor for the coffee before releasing it to Rivas. When the coffee was sold, the proceeds were used to pay off the promissory notes to Citibank.

Rivas executed promissory notes in Restrepo's name in accordance with Citibank's requirements and as an accommodation to Rivas when he borrowed money from Citibank to purchase coffee from Restrepo. It was understood that Rivas would use the proceeds of the sale of the coffee purchased from Restrepo in payment of the promissory note signed in Restrepo's name.

Defendants claim they were defrauded in that Rivas, with the knowledge of Raymond Last, a Citibank vice president and a senior loan officer, and his assistant Abigail Arms[4] 1) executed promissory notes in Restrepo's name regarding coffee sold by other exporters; 2) failed to apply the proceeds of the sales of coffee purchased from Restrepo to repay promissory notes to which Rivas had signed Restrepo's name; and 3) converted Restrepo's assets in that the letters of credit Rivas obtained from Citibank were insufficient to pay Restrepo for the coffee supplied by him. Restrepo contends Citibank actively concealed the activities of Rivas, Last and Arms in breach of its fiduciary duty to him.

He asserts that in March 1979, Citibank became aware of these fraudulent activities, demanded he pay it $18,423,789.61 representing unpaid promissory notes in Restrepo's name signed by Rivas, and, fired Last and Arms. Affidavit of Ramiro Restrepo sworn to March 11, 1983 ("Restrepo Affidavit") at ¶¶ 14–16. Also, at approximately the same time, Citibank applied Restrepo's $4,000,000 certificate of deposit against its claim. *Id.*

In connection with their claim of economic duress, defendants allege that:

Real was induced to enter into the [Settlement] Agreement and execute the A, B and D Notes and Restrepo was induced to enter into the [Settlement] Agreement, the guaranty of Real's obligations and the release of Citibank under economic duress imposed by Citibank: Citibank made known its allegation that Restrepo owed it $18,423,789.61, which had the intended effect of paralyzing Restrepo's coffee export operations; since other banks refused to loan Restrepo the money required to finance coffee exports and Citibank refused to extend credit to him.

Answer to Amended Complaint at ¶ 54. Restrepo states that he learned about the fraud after he entered into the Settlement Agreement. Restrepo Affidavit at ¶ 9.

On January 19, 1983 Real Coffee and Restrepo also filed a third-party complaint against Jaime Rivas, Jaime Rivas & Company, some of Jaime Rivas & Company's employees, Raymond Last and Abigail Arms. The first claim of the third-party complaint is identical to the fifth counterclaim in the main action.

On February 9, 1983 Citibank filed the instant motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 with respect to the fourth and fifth counterclaims, and pursuant to Fed.R.Civ.P. 12(f) to strike the twelfth defense. On March 31, 1983 the court heard argument on the motion.

## DISCUSSION

It is stressing the obvious to observe that in evaluating a motion for summary judgment a court must "resolve all ambiguities

---

4. Defendants further allege Rivas and Last were business partners in a Bermuda corporation called Janira International. Answer to Amended Complaint at ¶ 48.

and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted). In this Circuit, summary judgment has been characterized as a "harsh remedy to be granted only where there are no material issues of fact to be tried." *Fili Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir.1977).

### A. The Fifth Counterclaim and Twelfth Defense

Citibank contends it is entitled to judgment with respect to the fifth counterclaim, or in the alternative to have the twelfth defense stricken, because the Settlement Agreement terminated all disputes between the parties. They also state that the facts related in support of the claims of economic duress, negligence or fraud are insufficient and must fail as a matter of law. In support of this contention Citibank asserts the agreement was executed by experienced businessmen on advice of counsel, and defendants' subsequent conduct constitutes a ratification of the Settlement Agreement and thus are therefore estopped from denying its validity.

Defendants respond that their allegations of fraud and economic duress raise material issues of facts and request that Citibank's motion be denied. Defendants also dispute they ratified or acquiesced in the Settlement Agreement. They say they informed Citibank of their dissatisfaction with the agreement and point to several instances in support thereof.

■ Citibank has failed to convince the court that there are no material issues of fact to be tried. The affidavits are in direct conflict on the issues which are the subject of the fifth counterclaim and twelfth defense. To set aside an agreement on the ground that it was the product of economic duress, the party making the claim must make a convincing showing that the agreement was coerced by means of a wrongful threat such that the exercise of free will was precluded. *See Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25, 272 N.E.2d 533, 535 (1971), *quoted in, First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 632 (2d Cir.1972). *See also International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.,* 544 F.2d 105, 108 (2d Cir. 1976).

■ The Restrepo Affidavit specifically alleges that Citibank officers committed fraud and economic duress. Restrepo Affidavit at ¶¶ 9–24. For example, Restrepo alleges that Citibank's $18,000,000 claim against him was the result of frauds which Citibank knew or should have known about. *Id.* at ¶ 14. He also alleges that a Citibank official threatened that if he did not agree to pay Citibank, "the bank would seize my property, prevent me from exporting and shut down my business." *Id.* at ¶ 17. He also states that "Citibank was pressuring the Colombian government and the Colombian Coffee Federation to prevent me from exporting coffee, for which government licenses are required." *Id.* at ¶ 18.

All that Citibank has to say in response is that Restrepo never informed them he had been coerced. In an affidavit, Jorge A. Bermudez, a vice president of Citibank who was the account manager of the Real Coffee account, states that "[a]t no time during our frequent meetings and conversations did Restrepo intimate that he or Real had been forced by economic duress of Citibank to enter into the Settlement Agreement or the Guaranty or to execute the notes delivered under the Settlement Agreement." Affidavit of Jorge A. Bermudez sworn to February 9, 1983 at ¶ 3. Similarly, John W. Ingraham, the Citibank senior vice president in charge of negotiating the Settlement Agreement, states "[a]t no time during the negotiation of the Settlement Agreement [and after it was executed], did Real, Restrepo or their lawyers intimate that Real or Restrepo had been forced by economic duress of Citibank into signing the Settlement Agreement, the notes, the

Guaranty or the Releases." Affidavit of John W. Ingraham sworn to February 9, 1983 ("Ingraham Affidavit") at ¶ 11. It is clear that serious incriminations and re- criminations remain to be resolved. Materi- al issues of fact remain at issue. They cannot be decided by summary disposition. Accordingly, Citibank's motion must be de- nied.

■■■ To address the matter further, it is well recognized that the state of mind of the victim who claims to have been coerced or defrauded is a critical element in cases involving economic duress. *See Hellenic Lines, Ltd. v. Louis Dreyfus Corp.,* 372 F.2d 753, 757 (2d Cir.1967). It is well settled that questions of motive, intent and credi- bility should not be determined on a sum- mary judgment motion, but rather must be determined at trial. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979); *Centronics Financial Corp. v. El Conquistador Hotel Corp.,* 573 F.2d 779, 782 (2d Cir.1978). Clearly, ques- tions of intent and credibility will have to be determined at trial.

Citibank persists that despite defendants' claims of fraud and duress it is entitled to summary judgment because the defendants considered the Settlement Agreement a val- id one, since they operated and received benefits under it for two years. A further argument is made that the defendants nev- er intimated they believed the agreement had been signed by them under economic duress until they filed their counterclaims. Citibank concludes the defendants are es- topped from denying its validity.

■■■ Citibank correctly contends that a contract executed under duress is not void but merely voidable, *see National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 645 (S.D.N.Y.1978), aff'd, 597 F.2d 314 (2d Cir.1979); Restatement (Second) of Contracts § 175 (1981), and that parties seeking to set aside an agreement on the grounds of duress who acquiesce in the agreement for a considerable period of time, ratify the agreement as a matter of

law. *Sheindlin v. Sheindlin,* 88 A.D.2d 930, 450 N.Y.S.2d 881 (N.Y.App.Div.1982). In *Sheindlin v. Sheindlin,* the court held that a party who partially complied with a con- tract for three years had ratified the con- tract. *See National American Corp. v. Fed- eral Republic of Nigeria, supra,* 448 F.Supp. at 646 (retaining payment without comment and requesting demurrage payments amounts to acceptance); *Grubel v. Union Mutual Life Insurance Co.,* 54 A.D.2d 686, 387 N.Y.S.2d 442 (N.Y.App.Div.1976) (ac- cepting benefits for two years ratifies con- tract). Under New York law, the test is whether the party claiming duress acted reasonably in asserting that claim under the circumstances. *See Austin Instrument, Inc. v. Loral Corp., supra,* 29 N.Y.2d at 133, 324 N.Y.S.2d at 28, 272 N.E.2d at 537.

Defendants attempt to meet the estoppel challenge by pointing to several instances they allege they expressed dissatisfaction with the agreement. On May 12, 1982 Jorge Bermudez, a Citibank official telexed Restrepo as follows:

This telex is intended to correct certain of the misstatements set forth in your telex of April 19, 1982.

1. The [Settlement Agreement] was entered into after long, free, and serious discussions between the parties thereto and their respective lawyers, and was cer- tainly not the product of any duress by Citibank.

Restrepo Affidavit at ¶ 28. This document bears on defendants' belief they had been coerced into entering into the Settlement Agreement. Other documents suggest that prior to the institution of this action they had put Citibank on notice of their dissatis- faction with the agreement. As early as April 22, 1980 at a meeting with Citibank officers concerning his problems in operat- ing under the agreement, Restrepo, in the words of a Citibank senior account officer, suggested they "[r]enegotiate the whole agreement" as one "option" to "resolve the impasse." *Id.* at ¶ 31 and Exhibit K there- to. Later, in April and May of 1981, Res- trepo informed Citibank he intended to "challenge the Agreement in court" if Citi-

bank did not agree to modify it. *Id.* at ¶ 34 and Exhibits M and N thereto. Later, on January 13, March 8, and April 19, 1982 Restrepo disavowed any obligations under the B Note and demanded that the Settlement Agreement be modified. *Id.* at ¶¶ 38–40 and Exhibits S and U thereto.[5]

Unlike the plaintiff in *Sheindlin v. Sheindlin, supra,* Citibank has failed to convince the court that defendants did not interpose objections which, when viewed in the light most favorable to the defendants, could be construed to preserve their claim of economic duress, fraud or negligence. Defendants' dissatisfaction is based primarily on economic grounds. Nevertheless, it raises at least an inference that the defendants suggested the agreement had been the product of duress, fraud or negligence. Where conflicting inferences may reasonably be drawn concerning a party's due diligence in raising a question of fraud, summary judgment is not an appropriate

method for their resolution. *See Robertson v. Seidman & Seidman, supra,* 609 F.2d at 591.[6] The court also finds that Citibank's estoppel argument is undercut because the defendants, although concededly benefitting under the Settlement Agreement, did not find out about the fraud scheme until some time after they entered into that agreement.[7]

Nor are defendants estopped from challenging the validity of the agreement because they were represented throughout the negotiations by counsel who wrote opinion letters stating the agreement was valid and enforceable. *See First National Bank of Cincinnati v. Pepper, supra,* 454 F.2d at 632. A party is not precluded from alleging fraud in the inducement merely because during the negotiations his counsel, unaware of the fraud, opined that the contract is valid. To repeat, the question of when defendants discovered the al-

---

5. Exhibit U to the Restrepo affidavit is a copy of a telex Restrepo sent to Citibank on April 19, 1982 reiterating his proposal to modify the Settlement Agreement. Restrepo states that:

   "In making this proposal we took into account the following: 1) the origin of the agreement of November 19, 1979 was our interest in (a) liquidating certain liabilities on our account and in favor of the cooperative of coffee growers of Pereira, which are the origin of Note 'D' and which show our interest in fully recognizing our debts and (b) trying to liquidate, with our effort and work, some liabilities that due to the negligence, bad management and possible bad faith of persons implicated in that operation, were recorded in our name in the Citibank accounts and which are the origin of Note 'A' and (c) by demand of Citibank and in conditions very different from the foregoing cases we assumed some liabilities which, undoubtedly with no justification whatever as can be demonstrated in any court in the world, did not correspond to us, and which are those of Note 'B'."

   Restrepo goes on to conclude that for him to continue his relationship with Citibank "the agreement would have to be a new one, since the first one is inoperative, complicated and absurd. . . . If [Citibank] want[s] to litigate, we are ready for it, and when all is said and done, to make the payments in kind as proposed, is for us now, less good than to face a litigation which we have a chance of winning and demonstrate to public opinion, the court and the bank the irregularities and abuses perpetrated

   by your vicepresident of the agricultural department and his other collaborators in Citibank in association with other persons; facts which were only discovered because when the bank was audited one exporter of the group denounced the most highest vicepresidents of that section of the bank."

6. An issue of fact has also been raised concerning the extent of the benefits received by the defendants under the Settlement Agreement. The amount the defendants received under the twenty-four letters of credit, $10,106,802, is not in dispute. Citibank contends that as a matter of law the defendants' acceptance of this amount under the Settlement Agreement ratified that agreement. However, Restrepo characterizes this as "relatively minor in amount, sporadic and unprofitable." Restrepo Affidavit at ¶ 26. The court finds that a decision as to whether this benefit is sufficient to preclude defendants from attacking the Settlement Agreement must be addressed in light of the full circumstances of the defendants' operations.

7. If it were clear that defendants discovered the full extent of the alleged fraud and duress after signing the Settlement Agreement and failed to interpose any objections within a reasonable time, then defendants' objections would be insufficient to bar Citibank's claim of estoppel. However, the court finds there is a substantial question as to when the defendants learned or should have learned about the alleged fraud or duress.

leged fraud is a triable issue. *Royal Hair Pin Corp. v. Rieser Co.,* 218 N.Y.S.2d 773, 776 (N.Y.Sup.Ct.), *modified,* 15 A.D.2d 539, 222 N.Y.S.2d 719 (N.Y.App.Div.1961). Citibank's reliance on *Citibank, N.A. v. Bearcat Tire, A.G.,* 550 F.Supp. 148 (N.D.Ill.1982) is misplaced.

However, plaintiff's failure to prevail on its motion does not lighten defendants' heavy burden of proving economic duress in entering into the agreement. *See International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc., supra,* 544 F.2d at 108. This is especially true where, as here, the agreement was the product of substantial negotiations · between experienced businessmen advised by counsel. *See Neuman v. Pike,* 591 F.2d 191, 193–94 (2d Cir.1979). However, the court cannot, on the basis of the record before it, conclude that no material issues of fact are in dispute. Accordingly, Citibank's motion with respect to the fifth counterclaim must be denied. By reason of the foregoing, Citibank's motion to strike must also fail because defendants have demonstrated that the twelfth defense has fairly presented questions of fact or law. *See Oppel v. Empire Mutual Insurance Co.,* 92 F.R.D. 494, 496 (S.D.N.Y.1981).

*B. The Fourth Counterclaim*

Citibank contends it is entitled to summary judgment with respect to the fourth counterclaim because the agreement put an end to all disputes between the parties up until the date of the agreement. Thus, Citibank asserts that as a matter of law the agreement terminated defendants' claim for conversion or improper set-off of the $4,000,000 certificate of deposit, since that event preceded the agreement. *See National American Corp. v. Federal Republic of Nigeria, supra,* 448 F.Supp. at 643–44.

The agreement provides that "it is intended to settle all actual and potential contentions, claims, demands, rights and causes of action which have been or might have been asserted between the parties." Settlement Agreement, 2d "Whereas" clause. Section 2.04(a) of the Settlement Agreement further provides that as a condition precedent to the effectiveness of the agreement, "[t]he Guarantor and the Bank shall have exchanged general releases, in mutually satisfactory form, covering all acts and obligations of either of them undertaken or arising prior to the Loan Documents [the Settlement Agreement and financing documents thereunder]." Such releases were exchanged between Restrepo and Citibank on November 21, 1979. Ingraham Affidavit at ¶ 6.

The court concludes that summary judgment with respect to the fourth counterclaim is inappropriate because defendants' counterclaim challenging the validity of the Settlement Agreement, as well as the releases executed thereunder, has survived Citibank's motion for summary judgment.[8] *See Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir.), *cert. denied,* 423 U.S. 873, 96 S.Ct. 140, 46 L.Ed.2d 104 (1975) (court may in its discretion deny summary judgment as to issues "ripe" for summary judgment where those issues are closely intertwined with issues to be tried); *Berman v. Royal Knitting Mills, Inc.,* 86 F.R.D. 124, 126 (S.D.N.Y.1980). A settlement contract may be attacked on the grounds that it was procured by fraud, duress or other unlawful means. *First National Bank of Cincinnati v. Pepper, supra,* 454 F.2d at 632. A court is required to consider all the facts relevant to a party's claim of duress or fraud, and not merely rely upon a settlement agreement as evidence that the parties resolved their differences. *Id.*

## CONCLUSION

On the basis of the record before it, the court cannot conclude that Citibank is entitled to summary judgment with respect to either the fourth or fifth counterclaim, nor should the twelfth defense be stricken. Ci-

---

8. Where the validity of a release is challenged on grounds of duress, the standard applied is the same for contracts generally. *See Matter*

*of O'Hara,* 85 A.D.2d 669, 445 N.Y.S.2d 201 (N.Y.App.Div.1981).

tibank's motion for partial summary judgment or to strike is denied in all respects.

SO ORDERED.