**Enrique F. GITTES, Plaintiff,**

v.

**COOK INTERNATIONAL and Edward W. Cook, Defendants.**

**No. 82 Civ. 8015 (SWK).**

United States District Court, S.D. New York.

Nov. 29, 1984.

Fox, Glynn & Melamed by Joseph D. Becker, Carl L. Distefano, New York City, for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson by Matthew Gluck, Brian Ochs, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On October 12, 1984 I issued my decision in the above-captioned matter. It has come to my attention that certain modifications of this Order are necessary. Such modifications are reflected in this amended opinion.

This case was tried in a one-day trial before the bench. In the intervening months, counsel for both sides have prepar-

ed and submitted post-trial memoranda. After careful consideration of the evidence adduced at trial and the arguments put forth in the post-trial briefs, and for the reasons set out below, the Court finds for plaintiff in the amount of $250,000.

## BACKGROUND [1]

Plaintiff Enrique Foster Gittes ("Gittes") is a businessman and financial consultant. In 1981, his services as a consultant were retained by an English company, NNC Energy plc ("NCC"), of which he was also a director. NCC's principal business was as a holding company, investing its capital in other businesses in return for a stake in those businesses. Gittes' activities for NCC were not made clear at trial; however, NCC believed his services to be useful and worthwhile, and compensated him at the rate of $100,000 per year for his consultancy work.

One of NCC's investments was a substantial holding of the shares of an American company, Simplicity Pattern, Co. ("Simplicity"). For reasons which are not relevant here, Gittes' contract to perform consulting services for NCC was assigned to Simplicity. Prior to that assignment, Gittes was elected to the Board of Directors of Simplicity. It is this dual relationship between Gittes and Simplicity which led to this lawsuit.

In April, 1982, NCC found itself in difficult financial condition and decided to sell its holdings in Simplicity as a means of realizing badly needed cash. To that end, NCC began a search for a purchaser of the Simplicity shares, in which search Gittes was an active participant. The search led to offers to buy from at least two sources, one in New York and one in Europe. NCC apparently decided to accept the offer from the New York purchaser, while holding the European offer in reserve in the event the New York purchaser withdrew or otherwise failed to close the sale.

The sale by NCC of its Simplicity stock apparently made more urgent shortly before the agreement to sell the shares was to be consummated, by the threat of various financial sources to call outstanding debt, thereby forcing NCC into receivership. On May 7, 1982, the sale of the shares to the New York purchaser was scheduled to take place in the offices of the law firm Debevoise & Plimpton. Gittes and the individual defendant, Edward W. Cook, arrived together. At some point after the closing began, it came to Gittes' attention that the purchaser apparently required the resignation of the four directors of Simplicity who had been elected by NCC as a shareholder of Simplicity. These directors included Gittes and three other directors of NCC; of the four, only Gittes had failed to tender his resignation prior to the closing. Apparently, in fact, only Gittes had not been informed that these resignations were considered a necessary prerequisite to consummation of the purchase of the shares by the New York purchaser. When informed of this fact, Gittes initially flatly refused to tender his resignation from the Simplicity board. There is significant divergence, both of opinion and in the evidence adduced at trial, as to Gittes' motivation for refusing to resign. His motivation, however, is not relevant here.

Gittes' refusal to resign created serious problems, jeopardizing the closing. Clearly, some accommodation needed to be made, and eventually one was agreed upon; Gittes would resign from his position on the Simplicity board and his consultancy with Simplicity in return for a five year, $50,000 per year, consultancy contract with Cook International, Inc. ("Cook International"). Cook International, headed by Edward W. Cook and the largest shareholder of NCC, stood to be the greatest loser if the sale of the Simplicity shares failed to occur and resulted in NCC's going into receivership. Cook International, through its chairman Edward W. Cook, offered to

---

1. This description is taken from the transcript of the trial and the respective exposition of the facts in the parties' Post-Trial Memoranda.

employ Gittes as a financial consultant, an offer which Gittes accepted. Subsequently, however, Gittes was given no responsibilities[2] and was never paid, and on October 12, 1982, Cook International repudiated the contract by letter to Gittes. TR. 48; PE 25. Shortly thereafter, Gittes commenced this action.

## DISCUSSION

The issues in this case tend to overlap. Plaintiff claims that Cook's offer to employ him as a consultant was accepted by him and was sufficiently definite to constitute a contract. Defendants, in response, claim that any alleged contract based on the undisputed facts fails to satisfy the Statute of Frauds because it was never reduced to a writing signed by the party to be charged. Furthermore, defendants argue that the contract, assuming there was one, was made under duress and is therefore voidable. In reply, plaintiff points to several subsequent writings issuing from defendants in which reference is made to the consultancy agreement between Cook International and Gittes, and that these writings satisfy the Statute of Frauds. Furthermore, plaintiff claims that any pressure which Gittes exerted on Cook and Cook International did not rise to the level of duress within the meaning of contract law and that any duty which Gittes owed NCC to facilitate the sale of the Simplicity shares as a means of relieving NCC's financial difficulty is not assertable by Cook International either independently or as a shareholder of NCC.

### 1. *The Consultancy Agreement*

The logical starting place in this analysis is with the question whether there ever was a contract between Cook International and Gittes. It is undisputed that Edward W. Cook acting in his capacity as chairman of Cook International, offered Gittes a consultancy contract with Cook International for a five-year term at an annual compensation of $50,000, and that Gittes accepted

the offer. Cook testified that he never intended to honor the offer, and that he had been advised by one of his attorneys, a partner at Debevoise & Plimpton, that such an agreement would be unenforceable in any event. Cook's lack of intent to honor his offer is relevant on two points: whether there was some fraudulent inducement to Gittes' in entering the contract, and whether some element of promissory estoppel is present in Gittes' resigning the directorship and the consultancy which he held with Simplicity in reliance on Cook's offer of work with Cook International. The fraud issue we put aside for the moment. With respect to promissory estoppel, Gittes clearly relied on Cook's promise when he resigned from his positions at Simplicity. Furthermore, given the situation, his reliance was reasonable since Gittes had no reason to doubt the sincerity of Cook's offer. Finally, Gittes' reasonable reliance was obviously detrimental, entailing as it did the surrender of positions at Simplicity which provided Gittes with compensation in excess of $100,000 per year. Thus far, then, we have offer, acceptance and reasonable, detrimental reliance.

The next point in this contract analysis concerns the degree to which the agreement between Gittes and Cook International was, or needed to be, reduced to writing to satisfy the Statute of Frauds. In New York, the applicable Statute of Frauds is General Obligations Law § 5–701, which states in relevant part that

> Every agreement, promise or undertaking is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime...

New York General Obligations Law (GOL), § 5–701(a)(1) (McKinney's 1963). The agreement in question here falls within

**2.** It is unclear whether Gittes tried to perform tasks for which he believed he had been hired.

In any event, as discussed below, the repudiation essentially preceded any performance.

this section of New York GOL since it was "not to be performed within one year [of its] making." From this conclusion the issue becomes whether there was a sufficient writing or memorandum of the agreement and whether it was subscribed by the party to be charged.

Both parties agree that, notwithstanding Cook's assent to Gittes' suggestion that the agreement be reduced to a written contract, and Gittes' submission to Cook of a form consulting contract, there was never executed a document which would serve as a formal agreement between the parties. This fact is only the beginning of the inquiry, however. As case law demonstrates, several writings other than a formal contract can suffice to satisfy the requirement of the Statute of Frauds. In the instant case, plaintiff proposes that at least two other writings promulgated by the defendant fill this requirement: a Prospectus issued by Cook International, the text of which was approved by Cook and refers to Cook's agreement to employ Gittes as a consultant for five years at an annual compensation of $50,000 per year (Plaintiff's Exhibit [PE] 16); and a memorandum signed by Cook which contains substantially the same terms and states flatly that Cook agreed to them as a necessary condition to Gittes' resignation from the Simplicity Board of Directors. (PE 14). Defendant contends that these documents do not satisfy the threshold requirements of the New York Statute of Frauds, that a writing must contain the essential terms of the agreement. "The concept of essentiality is relative. A term is 'essential,' and must thus appear in the 'memorandum,' if it seriously affects the rights and obligations of the parties and there is a significant evidentiary dispute as to its content." *Ginsberg Machine Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir.1965), citing *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953). In the instant case, the writings each contain the duration of the agreement (five years) and the annual compensation (fifty thousand dollars). The Cook International Prospectus makes fur-

ther reference to employment of Gittes "as a consultant to Cook..." (PE 16 at p. 17). Two of these terms, duration and compensation, are essential within the requirements of the Statute of Frauds because they seriously affect the rights and obligations of the parties.

Defendants agree that duration and compensation are essential and acknowledge that these terms are contained in the proffered writings. The defendants do, however, take issue with whether the nature of the plaintiff's duties under the alleged contract are an essential term and if so whether those duties are adequately described or are sufficiently determinable by reference to existing external facts as to eliminate any significant evidentiary dispute as to that term of the contract.

Plaintiff argues that his duties under the agreement are not essential terms of a contract within the context of this lawsuit because the significant evidentiary issue is not whether plaintiff performed adequately but rather whether the parties were obligated to perform at all. This argument is well taken and I hold that plaintiff's duties are not an essential term and therefore need not be reduced to writing. My holding is closely linked to the posture of this case. If defendants had awaited a tender of performance from plaintiff and then rejected it as inadequate and refused to compensate plaintiff, the nature of plaintiff's duties would clearly be the subject of a significant evidentiary dispute in a suit brought by plaintiff for breach. That is not this case, however, because defendants apparently choose to repudiate any agreement prior to a tender of performance, the precise nature of the required performance is not properly raised.

Furthermore, were the nature of plaintiff's duties properly before this Court, it appears from the aforementioned writings and a third document introduced at trial, *see* PE 20 and Transcript ("TR"), Cook Direct Examination, at p. 112, that both parties had a clear idea as to plaintiff's

skills and abilities and the work for which he held himself out as equipped. Defendants' disclaimers of such knowledge, and their further argument that these duties were not ascertainable by reference to external facts are disingenuous. "Consultant" is a term with significant baggage in this society and especially in the context of business and financial dealings. Finally, it bears noting that *defendants* used the term to describe *plaintiff* and were fully aware at that time of his background and the nature of the services he had rendered to his previous employers. *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1952). In sum, then, there are no missing material terms from the writings memorializing the agreement in question. The writings are either subscribed to or signed by the parties to be charges, to wit, Edward Cook, individually and Cook International, Inc., by Edward Cook, its chairman. The agreement therefore satisfies the Statute of Frauds.

### 2. *Duress and Fiduciary Duty*

Defendants, however, assert as a defense to the contract duress in the form of Gittes' pressure on Cook to make the contract as a condition or prerequisite to Gittes' resignation from the Simplicity board of directors. Under New York Law, a "contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of free will." *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971). In the instant case, defendants claim that Gittes' refusal to resign from the Simplicity board unless first given a consulting contract with Cook was implicitly a wrongful threat to disrupt NCC's sale of its Simplicity stock to MCO (the New York Purchaser). That plaintiff's condition precedent to his resignation was a form of pressure is clear. Plaintiff was aware of the upshot of his refusal to resign, and

knew that such a result would harm both defendants and NCC. Defendants and NCC obviously wanted to consummate the sale. Whether that pressure was a wrongful exercise is the crucial issue.

Defendants claim that Gittes had a fidiciary duty as a member of the board of NCC to act in the best interests of NCC.[3] They argue that by "holding up" Cook and Cook International for a consulting agreement as a condition to his resignation from the Simplicity board, Gittes placed his personal interest ahead, and to the jeopardy, of NCC's best interests and thereby breached his duty to NCC. In defense, plaintiff argues that he had valid reasons for pursuing the agreement he sought with Cook, which made his actions rightful even if they resulted in pressure on NCC and Cook; and that in any event Cook and NCC had viable alternatives to the sale to MCO, so that there was no coercive result from Gittes' demand.

Plaintiff's first argument is not well taken. The fiduciary duty which arises from membership on the board of directors of a corporation, or any other context where an individual takes on a fiduciary duty, always supersedes the private interest of the individual. The private interest in question here is two-fold: Gittes' desire to improve his personal finances by securing a well-compensated consultant's position; and his desire to protect his reputation from any adverse inference which might be drawn from his resignation from the Simplicity board during the pendency of a shareholder's derivative suit against him and other directors. His concerns with respect to each of these was purely personal since neither related, directly or indirectly, to his duties as board member of Simplicity or NCC.

As director of NCC, Gittes clearly owed a duty to act in NCC's best interests. This duty superseded any personal interests which Gittes had in the conclusion of a

---

**3.** There is apparently no dispute between the parties, and I furthermore find, that English law governs the issue of the duties of directors of English Companies. *Hausman v. Buckley*, 299 F.2d 696 (2d Cir.1962), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).

consultancy or other contract or in protecting his reputation. However, "to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he fiduciary? What obligations does he owe as a fiduciary?" *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 85–86, 63 S.Ct. 454, 458–459, 87 L.Ed. 626 (1943). It is not clear that Gittes' duty necessarily extended to resigning from the board of Simplicity, unless that resignation was in the best interests of NCC. Furthermore, it is highly questionable whether Cook or Cook International can assert the duty of Gittes to NCC as protection from the enforcement of the consultancy agreement into which they entered.

With respect to the first question, I find that Gittes' duty as a director of NCC did, at least theoretically, extend to an obligation to resign from the Simplicity board *if* such a resignation was in the best interests of NCC and did not conflict with a countervailing duty owed to Simplicity. However, the question remains whether Gittes' duty *in fact* reached that far given the circumstances present in this case.

The defendants argue that Gittes' duty did actually extend to an obligation to resign, and base that argument on the claim that the Simplicity sale would have collapsed had the resignation not have been tendered and the collapse would have led inexorably to the demise of NCC. There are two flaws in this argument. First, there was credible testimony that other alternatives to this sale of Simplicity existed. Therefore, the claim that the collapse of this sale meant the collapse of NCC is conjecture at best.

Second, and more fundamental, even assuming the imminent collapse of NCC if the transaction in question failed to close as scheduled, neither of these defendants has the right to assert duties owed to NCC. English company law provides that the duties of a director are to the company, not to individual shareholders, even majority shareholders. L.C.B. Gower, *Principles of Modern Company Law*, 573 (1979); 1 *Palmer's Company Law*, 852 (1982); *Gore-Browne on Companies* § 27–8 (1982) and cases cited therein. Cook International was a minority shareholder of NCC, and Cook while NCC's president, was not the alter-ego of NCC. In addition, it appears to this Court that the pressure brought to bear on plaintiff was motivated primarily by a concern on Cook's part to protect *his* investment in NCC, and not by any larger concern for the well-being of NCC or the shareholders as a whole.

■■■ Furthermore, defendants' argument that Gittes had, by his own admission at trial, assumed some fiduciary duty to Cook International relative to this transaction is without merit. Based on the evidence adduced at trial relative to this issue, the most that can be said is that Gittes had the impression that the interests of NCC and Cook International were parallel, if not identical. He also apparently felt a desire to avoid harming Cook International and wanted to help them if possible. Some of these desires and goals were undoubtedly motivated by Gittes' self-interest in maintaining cordial relations with Cook for the future. However, it is not possible to construe any of these motivations or the impression Gittes had of the relationship as creating a duty from him to Cook or Cook International. A fiduciary relationship can be created by law or by contract, and frequently arises from a business relationship. *See* Scott, *The Fiduciary Principle*, 37 Calif.L.Rev. 539 (194). There is no evidence here to prove that such a relationship was in fact created between plaintiff and defendant by the operation of law; furthermore, as discussed above, the defendants' passing argument that Gittes incurred some form of contractual obligation to them in the nature of a fiduciary duty is unsupported by any evidence except for plaintiff's expressed desire to avoid harming anyone, while protecting his interests. Therefore, Gittes owed the defendants no duty. His refusal to resign from the Simplicity board of directors may well have been a breach of his duty to NCC. However, Cook and Cook International have no

right to assert the duty owed by Gittes to NCC as a defense to their contract with Gittes. Neither Cook nor Cook International was Gittes' principal and neither had any claim on his loyalty prior to the consultancy agreement with him.

## CONCLUSION

It is my holding that, since Gittes owed these defendants no duty, he could have breached no duty to them in refusing to resign from NCC's board unless Cook International employed him as a consultant. It is also my holding that, since these defendants have no defense to the existence of the consultancy agreement, and all the essential elements of that agreement are present, Cook International is liable for the full value of the agreement, Two Hundred Fifty Thousand Dollars ($250,000). Defendants have not shown that plaintiff bore any burden to mitigate these damages, especially in light of Gittes' freedom to seek employment in addition to his work for Cook.

Finally, with respect to the other claims for damages, Gittes' claim for damages based on fraud are unsupported by the evidence, although this decision rests on the narrowest of margins. Nonetheless, I find that Gittes failed to demonstrate Cook's intent to defraud, and therefore deny Gittes damages based on his expectations of remaining on the Simplicity board and employed as a Simplicity consultant. Nor, given my holding that Gittes failed to carry his burden of proof as fraud, are punitive damages justified. However, these denials of special damages are not to be taken as an endorsement of Cook's policies or practices.

SO ORDERED.