■ THE SCOTTS COMPANY, LLC, Appellant, v ACE INDEMNITY INSURANCE COMPANY, Formerly Known as CIGNA INDEMNITY INSURANCE COMPANY, Formerly Known as NORTH STATE INSURANCE COMPANY, et al., Defendants, and PACIFIC EMPLOYERS INSURANCE COMPANY, Respondent. [858 NYS2d 121]—

Order and amended order, Supreme Court, New York County (Bernard J. Fried, J.), entered March 1, 2007 and March 26, 2007, respectively, which granted the motion of defendant Pacific Employers Insurance Company (PEIC) for summary judgment dismissing the complaint as against it and declared that the settlement agreement and release executed by the parties in December 2000 is valid and enforceable, unanimously affirmed, with costs.

Pursuant to a settlement agreement and release entered into in December 2000, plaintiff, in exchange for $325,000, released defendants from any and all past, present and future claims under insurance policies, whether known or unknown, issued by defendants. Four and a half years after executing the agreement and accepting the $325,000, plaintiff commenced this action to rescind the agreement. Plaintiff claims that the policy chart prepared by its agent, on which plaintiff relied in the negotiations leading to the agreement, contained a visual error that gave the impression that the total amount in primary coverage under the policies issued by defendant PEIC was $16 million. It is undisputed that the actual limits of each of the PEIC primary policies were $2 million per occurrence with an aggregate limit of $10 million per year. Thus, the difference between the primary coverage depicted on the policy chart and the amount of primary coverage actually provided by the PEIC poli-

cies was $64 million. It is also undisputed that the correct limits were written on the policy chart in eight different places, i.e., where the policies were depicted. However, the bars of the graph representing the policies were a smaller size than was commensurate with the dollar amounts.

There is no legitimate dispute that the settlement agreement and release was entered into by two sophisticated commercial entities, that there were no deceptive or high pressure tactics, that there was no fine print in the unambiguous agreement, and that there was no disparity between plaintiff and defendants in experience or bargaining power. The negotiations took place over a period of 21 months; plaintiff was advised by legal counsel and had retained a consulting firm that assists policyholders in resolving complex insurance claims. Plaintiff was free to walk away from the negotiations at any time and litigate its differences with defendants in the United States District Court for the Southern District of New York, where a declaratory judgment action by defendants was pending. Thus, plaintiff's claim of procedural unconscionability fails as a matter of law (*see Gillman v Chase Manhattan Bank*, 73 NY2d 1, 10-11 [1988]; *186-90 Joralemon Assoc. v Dianzon*, 161 AD2d 329, 330 [1990]; *Chrysler Credit Corp. v Kosal*, 132 AD2d 686 [1987]). Nor, contrary to plaintiff's contention, does the disparity in exchanged value— i.e., the release of $80 million in insurance coverage for $325,000—demonstrate substantive unconscionability (*see Gillman*, 73 NY2d at 12), since the disparity between the amount of insurance coverage plaintiff believed it was releasing, i.e., $16 million, and the $325,000 it received in exchange was itself substantial, and yet, after 21 months of negotiations, plaintiff agreed to that exchange.

Plaintiff's claim of mutual mistake also fails as a matter of law. Plaintiff admits that its agent prepared the policy chart based on its review of the insurance policies, rather than on any information provided by PEIC. Moreover, while the bar graph may have been inaccurate, the text that accompanied it set forth the correct policy limits. Since plaintiff's agent obviously was aware of those limits, there was no mistake. However, even assuming there was a mistake, the mistake was not so material as to go to the foundation of the agreement (*see Da Silva v Musso*, 53 NY2d 543, 552 [1981]). The stated purpose of the agreement was to fully and finally terminate the parties' relationship as insurer and insured under the policies. The nature of the agreement thus remains intact irrespective of the policy limits. In fact, although in the agreement the policies were identified by number, policy period and issuing company, the

policy limits were not even mentioned. Moreover, under the agreement, plaintiff released an unknown number of policies with unknown limits. In any event, it does not avail plaintiff to invoke even a material mistake to avoid the consequences of its own negligence (*see P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d 200, 201 [1996]). Plaintiff could have easily ascertained the limits of the policies by reading the policies. Instead, it assumed the risk of proceeding based upon secondhand information presented to it by its own agent.

Further discovery will not aid plaintiff in overcoming the hurdles to its claims.

We have considered plaintiff's remaining contentions and find them without merit. Concur—Lippman, P.J., Saxe, Buckley and Acosta, JJ. [*See* 18 Misc 3d 1139(A), 2007 NY Slip Op 52542(U).]