CRG at Arnot Mall, Inc. v Feehan (2019 NY Slip Op 08467)





CRG at Arnot Mall, Inc. v Feehan


2019 NY Slip Op 08467


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

527805

[*1]CRG at Arnot Mall, Inc., et al., Appellants,
v
Courtney Feehan et al., Respondents.

Calendar Date: October 17, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


Hancock Estabrook LLP, Syracuse (Janet D. Callahan of counsel), for appellants.
Maggs Law Offices, PLLC, Elmira (Bryan J. Maggs of counsel), for respondents.



Aarons, J.
Appeal from an order of the Supreme Court (O'Shea, J.), entered October 5, 2018 in Chemung County, which, among other things, partially granted defendants' cross motion for summary judgment on its counterclaims.
Plaintiffs CRG at Arnot Mall, Inc., CRG at Main Street, CRG at Southport, Inc. and CRG at Horseheads, Inc. (hereinafter collectively referred to as CRG) are subsidiaries of plaintiff Coastal Restaurant Group, Inc. Plaintiff Jeffrey Parker is a corporate officer of CRG and Coastal Restaurant Group. In March 2014, CRG and defendant Courtney Feehan (hereinafter Feehan) entered into a purchase and sale agreement wherein Feehan would purchase four McDonald's restaurants that were owned and operated by CRG. According to the agreement, the closing would take place on May 6, 2014, and $300,000 would be held in escrow as security for CRG's obligations. The agreement also provided that the purchase price would be $4.2 million, plus, as relevant here, the value of the inventory at the time of the sale. Feehan, however, would be entitled to a credit for required reinvestments, the amount of which would be determined following an inspection under McDonald's Capital National Restaurant Business and Equipment Standards program [FN1] and by items put on a punch list. The amount of the reinvestment credit was anticipated to be approximately $200,000.
In April 2014, McDonald's inspected the four restaurants and determined that the reinvestment amount was approximately $725,000 for all of them. On May 5, 2014, the day before the scheduled closing, a final walk through of the restaurants was conducted and a punch list was created. The required repairs under the punch list was estimated to cost approximately $120,000. That same day, CRG and Feehan entered into an amendment to the agreement that, as relevant here, changed the purchase price from $4.2 million to $3.85 million and eliminated the reinvestment credit available to Feehan. Feehan thereafter assigned her rights under the agreement and the amendment to defendants Cayuga Arnot Mall LLC, Cayuga Grand Central LLC, Cayuga N. Main LLC and Cayuga Southport, LLC.[FN2]
In August 2014, plaintiffs commenced this action seeking, among other things, the release of the $300,000 held in escrow, in addition to an inventory payment of $65,868.13 as required by the agreement. Defendants answered and sought, as its fourth counterclaim, to have the amendment to the agreement declared void. Plaintiffs thereafter moved for summary judgment arguing that it was entitled to the $300,000 held in escrow and the inventory payment and that defendants' counterclaims should be dismissed. Defendants opposed and cross-moved for, among other things, summary judgment on its fourth counterclaim. In an October 2018 order, Supreme Court, among other things, granted defendants' cross motion for summary judgment on its fourth counterclaim. In finding the amendment void, the court awarded defendants $172,775 of the $300,000 placed in escrow — an amount representing what defendants overpaid as a consequence of the amendment. The court also granted other parts of defendants' cross motion seeking summary judgment on their counterclaims and awarded them $20,455.98 from the escrow funds.[FN3] As to plaintiffs' motion, the court granted it to the extent of awarding them the remaining balance of the escrow funds. Finally, the court did not award counsel fees in favor of any party. Plaintiffs appeal.
A party seeking to void a contract on the basis of economic duress must show that he or she was compelled to agree to it because of a wrongful threat precluding the exercise of his or her free will (see Austin Instrument v Loral Corp., 29 NY2d 124, 130 [1971]; Laberge Eng'g & Consulting Group v Mayer, 184 AD2d 950, 951 [1992]; Finserv Computer Corp. v Bibliographic Retrieval Servs., Inc., 125 AD2d 765, 766 [1986]). "The existence of economic duress is demonstrated by proof that one party to a contract has threatened to breach the agreement by withholding performance unless the other party agrees to some further demand" (805 Third Ave. Co. v M.W. Realty Assoc., 58 NY2d 447, 451 [1983] [citation omitted]). A mere threat to breach a contract, however, does not amount to economic duress if the party who has been threatened can obtain performance of the contract from another source and pursue normal legal remedies for a breach of contract (see Austin Instrument v Loral Corp., 29 NY2d at 130-131; MLI Indus. v New York State Urban Dev. Corp., 205 AD2d 998, 1000-1001 [1994]).
As an initial matter, plaintiffs contend that the March 2014 agreement was not a valid agreement because a material term — specifically, the final price — was missing. We disagree. According to the agreement, the final price was dependent upon the reinvestment credit, which was not to be determined until a later point. Given that the agreement provided for a formula to calculate the final price, "there exist[ed] an objective method for supplying a missing term" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91 [1991]). Therefore, the agreement is valid.
That said, defendants maintain that Parker wrongfully threatened not to go forward with the closing unless Feehan agreed to amend the agreement. In this regard, both Feehan and Michael Feehan testified in their respective depositions that they were "extorted." Plaintiffs counter that the amendment was a product of a sophisticated negotiation between the parties. Indeed, the record discloses that Michael Feehan and Parker, along with their respective counsel, had discussions about the agreement and the amendment. Notwithstanding the foregoing, even if we agreed with defendants that Parker made a wrongful threat, we find that Supreme Court erred in concluding that defendants agreed to the amendment under economic duress.
As the parties relying on economic duress, defendants bore the burden of proving that the agreement could not have been performed by another party. Defendants, however, failed to tender any proof in this regard. Furthermore, Supreme Court erred to the extent that it took judicial notice of the fact that defendants would not have been able to obtain equivalent performance of the agreement from another party. Such fact is "neither of common knowledge or determinable by resort to sources of indisputable accuracy" (Matter of Crater Club v Adirondack Park Agency, 86 AD2d 714, 715 [1982] [internal quotation marks, ellipsis and citation omitted], affd 57 NY2d 990 [1982]).
In addition, although the documentary evidence demonstrates that defendants would have lost their financing if the closing did not take place on May 6, 2014, this fact was first conveyed to Parker's counsel on May 5, 2014. There is also no indication in the record that Parker leveraged this fact in order to secure the amendment. Nor does the record indicate that Parker put defendants in the position of losing their financing by a particular date (see Edison Stone Corp. v 42nd St. Dev. Corp., 145 AD2d 249, 256 [1989]).
The record also fails to establish that other legal remedies were not available to defendants. Indeed, Michael Feehan testified that, before agreeing to the amendment, he and Feehan weighed whether to take possession of the restaurants and then sue to have the original agreement enforced or not to take possession and then sue plaintiffs for specific performance. The fact that neither of those options was ultimately desirable does not mean that defendants did not have available legal remedies. Because defendants could resort to legal recourse, they cannot claim economic duress (see MLI Indus. v New York State Urban Dev. Corp., 205 AD2d at 1000-1001; Colonie Constr. Corp. v De Lollo, 25 AD2d 464, 465 [1966], affd 20 NY2d 917 [1967]). To the extent that defendants argue, as an alternative ground for affirmance, that the amendment was void for lack of consideration, such claim is without merit (see General Obligations Law § 5-1103).
Plaintiffs further contend that, under the agreement, defendants owed them an inventory payment of $65,868.13 and that Supreme Court failed to grant them summary judgment on their claim as to this payment.[FN4] The record reflects, and defendants conceded at oral argument, that plaintiffs are entitled to this payment. Accordingly, summary judgment in favor of plaintiffs on their claim for the inventory payment is warranted.
Finally, plaintiffs argue that they are entitled to counsel fees in the event that the amendment is found to be valid. "Under the general rule in New York, [counsel] fees are deemed incidental to litigation and may not be recovered unless supported by statute, court rule or written agreement" (Flemming v Barnwell Nursing Home & Health Facilities, Inc., 15 NY3d 375, 379 [citation omitted]; see Marrotta v Blau, 241 AD2d 664, 664 [1997]). The agreement allows, but does not mandate, the recovery of counsel fees in favor of an "aggrieved party" seeking to protect its rights under the agreement. Both plaintiffs and defendants were aggrieved and resorted to court intervention to enforce their respective rights under the agreement. Supreme Court granted relief to both parties, and our determination herein does not alter that result. As such, we conclude that counsel fees are not warranted.
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied plaintiffs' motion for summary judgment (a) on its claim for the $65,868.13 inventory payment and (b) dismissing defendants' fourth counterclaim and (2) granted defendants' cross motion for summary judgment on its fourth counterclaim; motion granted and cross motion denied to said extent; and, as so modified, affirmed.



Footnotes

Footnote 1: This program requires a representative of McDonald's to inspect and identify any capital improvements that must be made for a restaurant to meet franchise standards.

Footnote 2: These limited liability companies are wholly-owned subsidiaries of Cayuga Restaurant Group, a management company of which Michael Feehan, Feehan's spouse, is the president.

Footnote 3: This part of Supreme Court's order is not challenged on appeal.

Footnote 4: We note that Supreme Court did not discuss this aspect of plaintiffs' motion. Nevertheless, the failure to do so constitutes a denial thereof (see Matter of Persaud v City of Schenectady, 167 AD3d 1126, 1127 [2018]).