Ganieva v Black (2025 NY Slip Op 00271)

Ganieva v Black

2025 NY Slip Op 00271

Decided on January 16, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 16, 2025

Before: Manzanet-Daniels, J.P., Friedman, Gesmer, Shulman, Michael, JJ. 

Index No. 155262/21 Appeal No. 2932 Case No. 2023-05694 

[*1]Guzel Ganieva, Plaintiff-Appellant,
v
Leon Black, Defendant-Respondent.

Bergstein and Ullrich, New Paltz (Stephen Bergstein of counsel), for appellant.
Perry Law, New York (E. Dana Perry of counsel), for respondent.

Order, Supreme Court, New York County (David B. Cohen, J.), entered on or about June 2, 2023, which granted defendant's motion to dismiss plaintiff's second amended complaint, affirmed, with costs.
Supreme Court properly concluded that terms of the nondisclosure agreement (NDA) covered all of plaintiff's claims (see Scotts Co., LLC v Ace Indem. Ins. Co., 51 AD3d 445, 445 [1st Dept 2008]). The language of the NDA is unambiguous as to whether plaintiff agreed to waive future claims, as it expressly specified that plaintiff was releasing claims "arising prior to the signing" of the agreement and claims arising at "any time in the future after the signing" of the agreement (see McMahan & Co. v Bass, 250 AD2d 460, 461 [1st Dept 1998], lv dismissed in part, denied in part 92 NY2d 1013 [1998]). Despite plaintiff's position otherwise, a clause releasing future claims as to the very matter in controversy does not contravene public policy (see Philips S. Beach LLC v ZC Specialty Ins. Co., 17 Misc 3d 1109[A], 2007 NY Slip Op 51891[U],*3 [Sup Ct, NY County 2007], affd 55 AD3d 493 [1st Dept 2008]).
Even accepting the dissent's position that the NDA was signed under duress, plaintiff ratified the document by accepting its benefits over a five-and-a-half-year period (see Allen v Riese Org., Inc., 106 AD3d 514, 517 [1st Dept 2013]). As the motion court found, plaintiff received approximately $9 million from defendant after signing the NDA. Included was a $100,000 stipend that plaintiff received every month throughout the life of the NDA. Plaintiff accepted each payment without protest and only commenced the instant action seeking to disaffirm the NDA three months after the payments ceased. To this date, plaintiff has not returned any portion of the benefits she received under the NDA.
We also reject plaintiff's contention that she should not be deemed to have ratified the NDA because she lacked knowledge of its terms. This contention is contradicted by the allegations in the second amended complaint, in which plaintiff alleges that defendant agreed to give her substantial consideration in exchange for her silence about their relationship. Similarly, that there is no physical copy of the NDA has no legal effect on ratification, especially since plaintiff commenced this action without having a copy of the agreement.
Furthermore, plaintiff fails to demonstrate that any alleged duress continued through the five-year period following the execution of the NDA or that her failure to promptly challenge the agreement was the result of continuing duress (see Yoon Jung Kim v An, 150 AD3d 590, 593 [1st Dept 2017]). Although New York law provides a narrow exception to the doctrine of ratification "where during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress," plaintiff must promptly repudiate the agreement once the duress has ceased (Sosnoff v Carter, 165 AD2d 486, 492 [1st Dept 1991[*2]], citing 13 Williston, Contracts §§ 1624, 1627 [3d ed]). The dissent correctly notes that the five-year lapse here is significantly longer than the continuing duress periods in Yoon Jung Kim and Austin Instrument v Loral Corp. (29 NY2d 124 [1971]). In Yoon Jung Kim, the defendants commenced the action two months after the plaintiff's accomplices threatened and imprisoned their family members in Korea(Yoon Jung Kim, 150 AD3d at 592). Similarly, the defendant in Austin Instrument notified the supplier of its intention to seek recovery after receiving the last delivery under the contract (Austin Instrument, 29 NY2d at 129-130). More on point is our decision in Stacom v Wunsch (162 AD2d 170 [1st Dept 1990], lv dismissed 77 NY2d 873 [1991]). There, the plaintiff received several million dollars in assets pursuant to a separation agreement. The plaintiff sought to invalidate the separation agreement on the grounds of coercion and duress despite not having any contact with the defendant for five years. We determined that "[f]or five years, plaintiff accepted the benefits of the separation agreement in silence, and she has not demonstrated that the alleged duress and coercion by defendant continued after she signed the separation agreement. Accordingly, plaintiff has effectively ratified the separation agreement" (id. at 171).
Similarly, plaintiff here received approximately $9 million dollars in benefits from defendant since signing the NDA. During that time, the only contacts between the parties were the ones that plaintiff and her attorney initiated to request a copy of the NDA. We recognize the trauma attendant upon sexual abuse, which was the reason for the Legislature's extension of the statute of limitations for civil actions. However, we disagree with the dissent that the same principle should allow plaintiff to repudiate a contractual arrangement after accepting its benefits for over five years.
We also disagree with the dissent that plaintiff was able to speak out in 2021 only after attending law school "and becoming educated about issues of consent." As set forth in the complaint, in 2020, plaintiff was advised by retained counsel regarding the NDA
and, in 2019, plaintiff confronted defendant via text message about the abusive and non-consensual nature of the relationship, explicitly stating that "I was forced to sign [the NDA] under duress."
All concur except Gesmer, J. who
dissents in a memorandum as follows:

Gesmer, J. (dissenting)
 

I respectfully dissent.
I would find that plaintiff has sufficiently pleaded that she was acting under duress when she executed the nondisclosure and release agreement (NDA) on or about October 18, 2015, that she remained "under the same continuing duress" until at least March 17, 2021, that her actions taken under duress cannot constitute ratification (Yoon Jung Kim v An, 150 AD3d 590, 593 [1st Dept 2017], quoting Sosnoff v Carter, 165 AD2d 486, 492 [1st Dept 1991]), and that she timely acted to disaffirm [*3]the NDA (Yoon Jung Kim, 150 AD3d at 593) when she commenced this action in June 2021. Accordingly, I would modify the motion court's order to deny the motion to dismiss plaintiff's causes of action for defamation per se and her claim under the Victims of Gender-Motivated Violence Protection Law (Administrative Code of the City of NY § 10-1104), and otherwise affirm.[FN1]
On a motion to dismiss, we accept the allegations in the complaint as true, view them in the light most favorable to the party opposing dismissal, and give her the benefit of any reasonable inference (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).
Here, plaintiff's complaint includes the following factual allegations. Throughout the years of their relationship, defendant "physically, mentally and emotionally abused" plaintiff, by, among other things, committing repeated acts of sexual abuse. His violent behavior toward her caused plaintiff to experience that he "exert[ed] complete physical, mental and emotional control" over her. She feared defendant "[a]t all times," "even when not in his physical presence." In 2014, he raped her. Soon afterwards, she left the United States with her son. During the time she was outside of the United States, defendant repeatedly contacted her and described her whereabouts, actions, and people she had been with, letting her know that he was able to track her movements. Specifically, she alleged that "[n]o matter the physical distance between them, [plaintiff] never stopped feeling threatened by [defendant] and his power and control over her." In 2015, hoping to find a way to "be able to live her life without his continued involvement," plaintiff returned to New York and asked to meet with defendant. They met several times. During these meetings, defendant insisted that she enter into an arrangement under which he would pay her money and forgive loans he had made to her in return for her silence about his treatment of her. Defendant also told plaintiff that he wanted her to accept the money from him and say that she was "blackmailing" him. At first, she resisted because she only wanted defendant's "harassment of and control over her to stop." However, defendant was "relentless" and urged her to accede to his wishes, threatening that, if she did not, something "horrible" would happen to her or her child. Ultimately, she signed the NDA in or about October 2015 because she believed that "refusing . . . was not an option. [Defendant] reminded [plaintiff] that if she did not take the 'deal' . . . he would make sure she ended up 'in prison' or he would 'destroy her life'" and he "threatened [her] safety if she did not agree." Plaintiff further alleges that she was "nervous and had difficulty understanding" the document defendant had her sign. He did not give her a copy.
"The defense [*4]of duress is established upon the showing of a wrongful threat precluding the exercise of free will . . . . The threat of criminal prosecution is sufficient for that purpose" (Yoon Jung Kim, 150 AD3d at 593). The majority does not address whether plaintiff adequately pleaded that she executed the NDA under duress. I would find that she did, since she alleges that she feared defendant, and that, as a result of his threats to harm her or her child if she did not sign, she was unable to exercise her free will when she executed the NDA.
"The failure to act promptly to disaffirm a contract entered into under duress can be fatal to the defense . . . . 'However, where during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased'" (Yoon Jung Kim, 150 AD3d at 593, quoting Sosnoff v Carter, 165 AD2d at 492). In my view, plaintiff sufficiently pleaded that she remained "under the same continuing duress" after she signed the NDA. This is the crux of my disagreement with my colleagues. Here, plaintiff alleges that defendant's threats to harm her did not have an end date, and that her fear of him, caused by years of his physical, sexual, and emotional abuse, continued "at all times."
However, as she alleged in her complaint, a combination of events in late 2020 and early 2021 were a "tipping point" which enabled her to gather the strength to overcome her continuing fear and speak out. On the one hand, she was strengthened by having attended law school and becoming educated about issues of consent, which enabled her to understand that her sexual relationship with defendant included acts taken against her without her consent and against her will. At the same time, she was outraged by defendant's public statement that "there has never been an allegation by anyone that I engaged in any wrongdoing, because I did not," and other similar statements. Accordingly, she has sufficiently pleaded that she remained under duress until at least March 17, 2021, when she gained the courage to speak out about her experience with defendant. Accordingly, on that date, she stated on social media that defendant had sexually harassed and abused her for years and that she "felt the need to speak publicly in order to prevent similar things from happening to other women."
I would further find that plaintiff has sufficiently pleaded that she acted "promptly" to disaffirm the NDA when she commenced this action in June 2021, approximately three months after she made her social media post about defendant. In Yoon Jung Kim, the defendants asserted their counterclaim alleging continuing duress approximately six months after they claimed the duress began, and at least two months after they alleged the plaintiff's associates threatened the defendants' family member in Korea (Yoon Jung Kim, 150 AD3d at 593). This Court found that the defendants were [*5]entitled to disaffirm a mortgage and promissory note, despite the fact that they had accepted the benefits of the plaintiff's forbearance on the collection of a prior business debt, since they remained under duress during that entire time.
Fear based on a party's past conduct can be sufficient for a finding of continuing duress. In Austin Instrument v Loral Corp. (29 NY2d 124, 133 [1971]), the Court of Appeals found continuing duress where the defendant Loral waited until "long after the termination date" of its contract with the plaintiff Austin to assert a claim of duress. Loral did not act earlier based solely on its fear that Austin might stop delivery of goods that would prevent Loral from fulfilling its contract with the U.S. Navy. The Court found that, "[c]onsidering Austin's conduct in the past, this was perfectly reasonable."
I recognize that the five-and-a-half-year period between plaintiff's execution of the NDA and her commencement of this action is longer than the periods of continuing duress in Yoon Jung Kim and Austin Instrument. However, this case involves allegations of abuse, sexual assault, and resulting trauma that extended over a period of several years.[FN2] The New York State Legislature has recognized that "trauma and [a] culture of silence" can prevent victims of sexual assault and abuse from speaking out for years after the assault or abuse took place (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 315). This recognition led to the passage in 2019 of laws extending the statute of limitations for civil actions based on rape and other forms of sexual assault and abuse from five years under the former statute to 20 years under the new legislation (CPLR 213-c [as amended by L 2019, ch 315]). In adopting the 2022 Adult Survivors Act, which further extended statutes of limitation for survivors not covered by the 2019 law,
"the New York Legislature, virtually unanimously, identified what it regarded as an injustice — the fact that even adult victims of sexual abuse too often have no legal remedies because they 'suppress[ ] memories of their abuse or they are afraid to come forward' until it is too late to sue. The governor did as well when she signed the bill that the Legislature passed" (Carroll v Trump, 650 F Supp 3d 213, 223 [SD NY 2023]).
In view of the Legislature's recognition that a sexual assault or abuse survivor might need as much as 20 years to come forward, and deeming plaintiff's allegations as true, as we must, I would find that a factfinder could find "perfectly reasonable" plaintiff's claim that she continued to fear defendant for five-and-one-half years after the execution of the NDA because of his abusive and threatening conduct toward her (Austin Instrument, 29 NY2d at 133).
Whether plaintiff can establish at trial or on a post discovery summary judgment motion that defendant abused and sexually assaulted her and that his treatment of her was, as she claims, designed to and in fact did instill [*6]in her a sense of fear and helplessness that "preclud[ed] the exercise of [her] free will" (Yoon Jung Kim, 150 AD3d at 593), even during a period when she had no direct contact with defendant, is a question for the factfinder.
Accordingly, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 16, 2025

Footnotes

Footnote 1: I agree with my colleagues and the motion court that plaintiff's claims for "retaliation" under the Victims of Gender-Motivated Violence Protection Law, intentional infliction of emotional distress, and defamation were properly dismissed for the reasons set forth in the motion court's order. The motion court found that plaintiff's defamation per se claim is sufficiently pleaded as to defendant's statement that plaintiff extorted defendant. Defendant has not argued that plaintiff's general civil claim under the Victims of Gender-Motivated Violence Protection Law was insufficiently pleaded, and the motion court did not address this claim.

Footnote 2: In contrast, the duress alleged in Austin Instrument was solely fear of defaulting on a contract.